UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:18-CV-759-TBR

SARAH STINSON                                                                                              PLAINTIFF

V.

STATE FARM MUTUAL AUTOMOBILE                                                           DEFENDANTS
INSURANCE COMPANY,
AND
STATE FARM FIRE AND CASUALTY COMPANY,
AND
CASEY SIMPSON AGENCY

## Memorandum Opinion & Order

This matter is before the Court upon a motion by Plaintiff, Sarah Stinson, to remand this action to Jefferson County Circuit Court, where Plaintiff filed it. (DN 9). Defendant, State Farm Mutual Automobile Insurance Company ("State Farm") has responded to Plaintiff's motion. (DN 13). Defendant, Casey Simpson Agency (the "Agency"), addressed Plaintiff's arguments in its response to Plaintiff's motion to place Defendants' motion to dismiss in abeyance. (DN 12). Plaintiff has filed her reply. (DN 14). Fully briefed, this matter is ripe for review and for the following reasons, Plaintiff's motion to remand is **GRANTED.**

## Background

The factual allegations as set forth in the Complaint, (DN 1-2 at 4), and taken as true are as follows.[1] On December 5, 2015, Plaintiff was involved in a motor vehicle accident. (DN 1-2 at ¶ 1). Because Plaintiff's injuries exceeded the available insurance limits of the tortfeasor, she

---

[1] *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) ("All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party.").

1

opened an underinsured motorist ("UIM") claim with her insurer—State Farm. (DN 9 at 1). Her UIM claim was denied. *Id.* After her UIM claims were denied, Plaintiff resolved her claims for the tortfeasor's policy limits. (DN 1-2 at ¶ 13).

After resolving her claims with the tortfeasor, Plaintiff alleges that she "discovered that State Farm had been systematically misrepresenting coverage available to its insureds by, amongst other tactics, failing to properly search for available coverage." (DN 9 at 2). Plaintiff claims that she then discovered available UIM coverage arising from other policies in her household. (DN 1-2 at ¶ 14). On September 18, 2018, Plaintiff attempted to confirm that there were applicable policies but the Agency advised her that they could not access the 2015 policies. *Id.* Plaintiff alleges that the Agency advised her that no policies could be found, and that State Farm does not look for all coverages that may cover its insureds. *Id.*; *See also* (DN 9 at 2).

Plaintiff claims that "[f]or more than two years, State Farm and Casey Simpson deceived Ms. Stinson as she and her counsel were repeatedly told that she was not insured under any policies which would afford her UIM coverage." (DN 9 at 3). Furthermore, Plaintiff claims "[t]he Agency and State Farm both, and in furtherance of a civil conspiracy, withheld information from Ms. Stinson and her counsel that she was actually an insured under two insurance policies affording $125,000 in coverage." *Id.* Plaintiff alleges that the Agency "conspired with State Farm to sell insurance policies with separate policy numbers for each vehicle in the household to assist State Farm in the misrepresentation of available coverage in order to defraud consumers and claimants" and that "the Agency engaged in conduct designed to deny or modify insurance coverage, to withhold available insurance coverage, and to deceive customers and their families into believing that insurance was not available or applicable to a loss when coverage existed." (DN 9 at 10-11). Plaintiff claims that the Agency participated in this scheme by, *inter alia*, "selling and assigning

separate policy numbers for each vehicle in the household." (DN 9 at 14). According to Plaintiff, the Agency knowingly concealed and misrepresented the existence of available under insured motorist coverage to its client, deliberately obstructed efforts to obtain information about coverage, and participated in a plan to deny payments to the insured for its own profits.

Furthermore, Plaintiff asserts that:

The Defendants misrepresented the available coverage to [Plaintiff], advising her and her counsel on multiple occasions that she was not covered by them for any underinsured motorist coverage ("UIM"). The Defendants never advised [Plaintiff] or her counsel that there was indeed UIM coverage to which she was entitled under household policies. This resulted in the claim being denied underpaid and the Defendants committing fraud, bad faith, unfair claims and settlement practices and breaching several duties to the insured. . . .

The Defendants are part of a scheme in which Scorecard Bonuses and other bonuses are paid if criteria are met. In order to meet these criteria, the Defendants have collaborated to deprive their insureds of coverage to which they are entitled and have misrepresented to their insureds what coverage they have either purchased or should be receiving in the case of a loss.

The Defendants have concocted a scheme in which they insure multiple vehicles of their insured, assign each vehicle a separate policy number and then withhold the existence of the available coverages when handling claims. . . . The Plaintiff was entitled to coverage under multiple policies, but the Defendants willfully and knowingly failed to advise the Plaintiff and her counsel of this. Instead, they simply cited the policy of the car involved in the crash and falsely represented that there was no UIM coverage available to the Plaintiff, thus depriving the Plaintiff of tens of thousands of dollars in available coverage under other policies.

(DN 1-2 ¶ 1-4) (formatting altered).

Plaintiff filed her complaint against Defendants in Jefferson County Circuit Court alleging violations of the Kentucky Consumer Protection Act, the Kentucky Unfair Claims and Settlement Practices Act, common law bad faith, breach of contract, fraudulent misrepresentation, and civil conspiracy. (DN 9 at 2-3). State Farm removed this action under diversity jurisdiction. Because Plaintiff and the Agency are both citizens of Kentucky, there is no diversity on the face of the

complaint. But State Farm and the Agency argue that the Agency's citizenship should be ignored under the doctrine of fraudulent joinder because, they argue, Plaintiff does not state a colorable claim against the Agency. State Farm argues that the Agency is fraudulently joined because (1) Plaintiff's bad faith claim against the Agency fails as a matter of law because the Agency was not a party to the contract of insurance between Plaintiff and State Farm; (2) Plaintiff's claim for fraudulent misrepresentation fails because Plaintiff does not plead fraud with sufficient specificity and the allegations against the Agency do not support a claim for fraud; and (3) Plaintiff cannot assert a colorable claim against the Agency for civil conspiracy because he has no viable free-standing cause of action and because no civil conspiracy claim can be brought against an insurance agent and its insurer as a matter of law. (DN 13 at 18-19). Plaintiff's motion to remand is now before the Court and for the following reasons, it is **GRANTED**.

**Legal Standard**

The burden to establish federal subject matter jurisdiction lies with the party seeking removal. *Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.32d 373, 377 (6th Cir. 2008) (citing *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453-54 (6th Cir. 1996)). Generally, a defendant may remove a civil case to federal court only if the action is one over which the federal court could have exercised original jurisdiction. *See* 28 U.S.C. § 1441, 1446. Because Plaintiff's complaint does not raise a federal question, the exclusive basis for federal subject matter jurisdiction is 28 U.S.C. § 1332, which requires the citizenship of each plaintiff to be diverse from the citizenship of each defendant. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996) (explaining the principle of complete diversity). While Plaintiff, a citizen of the Commonwealth of Kentucky, is diverse from State Farm, a company that is incorporated and maintains its principal place of business in Illinois, he is not diverse from the

Casey Simpson Agency, a Kentucky corporation. Therefore, complete diversity is lacking based on the face of Plaintiff's complaint. However, the Defendants insist that Plaintiff fraudulently joined the Casey Simpson Agency in an effort to defeat diversity jurisdiction and confine the case to state court.

Defendants bear the burden of proving fraudulent joinder. "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 564-65 (6th Cir. 2015) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). "If there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, [the district] Court must remand the action to state court." *Taco Bell Corp. v. Dairy Farmers of Am., Inc.*, 727 F. Supp. 2d 604, 607 (W.D. Ky. 2010) (citing *Coyne*, 183 F.3d at 493). In other words, if Plaintiff's claims have even "a 'glimmer of hope,' there is no fraudulent joinder." *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 597 (E.D. Ky. 2011) (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999)). This is a "heavy burden," *Mayes v. Rapoport*, 198 F.3d 457, 463 (4th Cir. 1999), as Defendants must demonstrate that there is no genuine basis upon which Plaintiff may be able to recover against the Casey Simpson Insurance Agency. *Coyne*, 183 F.3d at 493.

The standard for a defendant to successfully show fraudulent joinder is even higher than the standard a defendant must meet to succeed on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Anderson v. Merck & Co. Inc.*, 417 F. Supp. 2d 842, 845 (E.D. Ky. 2006) (citing *Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 845-46 (S.D. Ohio 2002)). "[T]he benefit of the doubt given a plaintiff as part of the fraudulent joinder inquiry should be more deferential than even that given under Rule 12(b)(6). . . . [A] decision overruling a motion

for remand where the defendant is claiming fraudulent joinder connotes that a plaintiff's claim, as to the non-diverse defendant, has no basis in law or reason." *Little*, 227 F. Supp. 2d at 846-47; *See also Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012).

As is always the case in matters concerning comity and federalism, any ambiguity must be resolved against removal. *See Brirly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999) (explaining that "the statutes conferring removal jurisdiction are to be construed strictly because removal jurisdiction encroaches on a state court's jurisdiction" and that ambiguities regarding the scope of removal "should be resolved in favor of remand to the state courts."). Furthermore, any ambiguities in the relevant state law must be resolved in the light most favorable to the Plaintiff. *Walker v. Phillip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011) (citing *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)); *See also Coyne*, 183 F.3d at 493 ("All doubts as to the propriety of removal are resolved in favor of remand.").

**Discussion**

According to Plaintiff's complaint, the Casey Simpson Agency is a citizen of Kentucky and therefore is not diverse from Plaintiff. The Court must therefore determine whether Plaintiff has asserted any claim against the Agency that is colorable. As an initial matter, it is important to recognize the limited nature of the Court's examination of the merits of Plaintiff's claims. The question before the Court is not whether Plaintiff will ultimately succeed in her claims against the Defendants. Instead, the question before the Court is whether there is a "glimmer of hope" or a reasonably arguable basis upon which Plaintiff might recover under Kentucky law. If there is a chance Plaintiff could succeed under Kentucky law, then the Court must remand the case to state court.

Plaintiff claims that State Farm and the Agency deceived her and repeatedly told her that she was not insured under any policies which would afford her UIM coverage. And Plaintiff claims that "[t]he Agency and State Farm both, and in furtherance of a civil conspiracy, withheld information from Ms. Stinson and her counsel that she was actually an insured under two insurance policies affording $125,000 in coverage." (DN 9 at 3). Plaintiff claims that State Farm and the Agency are each part of a scheme "in which they insure multiple vehicles with their insured, assign each vehicle a separate policy number and then withhold the existence of available coverages when handling claims." (DN 1-2 at ¶ 3). Plaintiff claims that these actions were incentivized by a system of "Scorecard Bonuses" that rewarded Defendants for depriving insureds of the coverage they are entitled to. *Id.*

Plaintiff claims, *inter alia*, that State Farm and the Agency each, and acting in concert, violated the Unfair Claims Settlement Practices Act ("UCSPA"), Ky. Rev. Stat. § 304.12-230. The UCSPA prohibits *any person*[2] from committing or performing seventeen specific acts or omissions including:

> (1) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; (3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (4) Refusing to pay claims without conducting a reasonable investigation based upon all available information; . . . (6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; . . . (9) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;

---

[2] Kentucky's Insurance Code defines "person" as including "an individual, insurer, company, association, organization, Lloyd's insurer, society, reciprocal insurer or inter-insurance exchange, partnership, syndicate, business trust or corporation, and every other related legal entity." Ky. Rev. Stat. § 304.1-020. The legislature limited this broad definition of "person" by passing KRS § 304.12-220 which states that "[f]or the purpose of [the UCSPA], 'person' shall not mean an insured."

7

Ky. Rev. Stat. § 304.12-230.

Defendants have not satisfied their burden of demonstrating that Plaintiff lacks a colorable claim for violating the UCSPA against the Agency. Defendants argue that a bad faith claim cannot be colorable against an insurance agency such as the Casey Simpson Agency. Specifically, it is unclear whether a Plaintiff can assert a claim for violation of the UCSPA against an insurance agency who allegedly acts in concert and in furtherance of a civil conspiracy with the insurer. Alternatively—if the Agency was acting as an agent of State Farm when it allegedly forged documents, withheld documents, and actively concealed coverage—the law is also unclear as to whether Plaintiff can state a colorable claim against the Agency without the conspiracy theory. In either case, this ambiguity must be resolved in favor of remand. Because Plaintiff has a colorable basis for at least one of his claims against the Agency, this Court cannot find that the Defendants have met their heavy burden of proving fraudulent joinder.[3] Therefore, Plaintiff's motion to remand must be granted.

*Davidson v. American Freightways, Inc.*, 25 S.W.3d 94 (Ky. 2004) is the most persuasive authority on this matter. Both Plaintiff and the Defendants argue that the case weighs in their favor. In *Davidson*, victims of a truck accident brought action against a self-insured motor carrier to recover damages for bad faith failure to promptly settle the claim. The Kentucky Supreme Court held that UCSPA and common law bad faith claims are limited "to *persons or entities* engaged in the business of insurance" and that the self-insured motor carrier was not a "person" subject to the

---

[3] Because Plaintiff has a colorable basis for her bad faith claim against the Agency and therefore remand is required, the Court does not reach any of the other claims asserted by Plaintiff.

8

UCSPA. 25 S.W.3d at 95. In a recent decision of the Eastern District of Kentucky, Judge Wilhoit explained:

> While *Davidson* indicates that a bad faith cause of action requires a contractual obligation, it does not require privity of contract between the plaintiff and the defendant. Instead, the Kentucky Supreme Court stated that the UCSPA applies to "insurance companies *and their agents* in the negotiation, settlement, and payment of claims made against policies, certificates or contracts of insurance."

*Hambelton v. State Farm Fire & Casualty Co.*, No. 18-65-HRW, 2018 WL 3233608, *3 (E.D. Ky. July 2, 2018) (quoting *Davidson*, 25 S.W.3d at 98 (emphasis added)). Although *Hambelton* involved the alleged fraudulent joinder of an insurance adjuster, the court's reasoning is equally applicable to the insurance agency in this case.

In *Gibson v. American Min. Ins. Co.*, No. 08-118-ART, 2008 WL 4602747, *6 (E.D. Ky. Oct. 16, 2008), Judge Thapar explained that the "*Davidson* opinion itself sends conflicting signals on the issue." The *Gibson* court explained

> On the one hand, the [*Davidson*] court appears to suggest that being "engaged in the business of insurance" requires engaging in the business of entering into contracts of insurance or being insured when it stated, "[n]othing in any of [the Kentucky insurance statutes] evidences a legislative intent that the Kentucky Insurance Code was designed to regulate persons who are neither insured nor engaged in the business of entering into contracts of insurance."

*Id.* Judge Thapar reasoned that this portion of the *Davidson* opinion suggests that the allegedly fraudulently joined defendants in *Gibson*—who were claims adjusters—could not be sued for bad faith because they were not insurers and did not enter into insurance contracts. On the other hand, the *Gibson* court explained that "the *Davidson* court arguably left the door open for bad faith liability for claims adjusters" because "of their involvement in the negotiation and settlement of claims." *Id.* Furthermore, the *Gibson* court explained that

> A statement at the end of the *Davidson* opinion further muddies the waters regarding claims adjusters' liability for bad faith claims. The court stated, "we thus

9

> hold that the UCSPA and the tort of 'bad faith' apply only to those persons or entities **(and their agents)** who are 'engaged . . . in the business of entering into contracts of insurance.'" *Davidson*, 25 S.W.3d at 102 (quoting Ky. Rev. Stat. § 304.1-104) (emphasis added). This statement could suggest that agents of entities entering into contracts are subject to bad faith claims.

*Id.* at *7. Based on these passages from *Davidson* and from its analysis of other relevant case law, the *Gibson* court reasoned that

> [b]oth sides of the debate can point to authority in support of their position. Such ambiguity clearly calls for remand because ambiguities in the applicable state law are to be resolved in favor of the non-removing party. . . . Stated differently, the ambiguities in Kentucky law provide the plaintiffs with an arguably reasonable basis for predicting that they could prevail on their bad faith claims against [the allegedly fraudulently joined defendants]. Therefore, these claims are colorable, and the joinder of [the claims adjuster defendants] was not fraudulent.

*Id.* at *6 (internal citation omitted). This Court agrees with the *Gibson* court's interpretation and finds *Davidson* to weigh in favor of remand. *Davidson* sends conflicting signals and creates ambiguity on the issue of which "persons" can be sued for bad faith under the UCSPA. The parties have not cited to Kentucky case law that cures this ambiguity, and the Court is not aware of any such case law.

Defendants raise several arguments to attempt to explain why the Agency is fraudulently joined. First, State Farm argues that Plaintiff "cannot assert colorable claims against the Simpson Agency for common law or statutory bad faith (eaither under the UCSPA or KCPA) as a matter of law because the Simpson Agency was not a party to the contract of insurance between Stinson and State Farm." (DN 13 at 18). Defendants correctly identify that, to succeed on her bad faith claims, Plaintiff must prove the following:

> (1) The insurer must be obligated to pay the claim under the terms of the policy;
> (2) The insurer must lack a reasonable basis in law or fact for denying the claim; and
> (3) It must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. . . .

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (format altered). And Defendants are correct that "[a]bsent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute." *Davidson*, 25 S.W.3d at 100. But it is not necessary for the Casey Simpson Agency to be a party to the contract for Plaintiff's bad faith claim to be colorable. As the Easter District of Kentucky explained in *Gibson*: "While the elements require a contractual obligation, just as *Davidson* does, the elements do not specify that the contractual obligation exist between the plaintiff and defendant." 2008 WL 4602747, *7 n.10. In other words, the elements of bad faith only require the existence of an obligation between the insurer and the insured; they do not require the existence of an obligation between every defendant and the plaintiff. The record is ambiguous regarding whether State Farm had an obligation to pay the claims sought by Plaintiff. The Court must therefore resolve that issue in favor of remand.

The Agency advances the same argument and alleges that "[t]he Kentucky Supreme Court recently clarified the "obligated to pay" element under the first prong of the <u>*Wittmer*</u> bad faith test in <u>*Travelers Indemn. Co. v. Armstrong*</u>, Nos. 2017-SC-000041-DG & 2017-SC-000042-DG, 2018 Ky. LEXIS 449 (Ky., Nov. 1, 2018)." (DN 12 at 17). The Agency correctly identifies that "[i]n <u>*Travelers*</u>, the Kentucky Supreme Court unequivocally held that without a contractual obligation for coverage, there can be no bad faith as a matter of law." *Id.* But *Travelers* does not state that each defendant must be obligated to pay the plaintiff for a bad faith claim to be valid. The *Travelers* court merely restates the well-settled principle that "in absence of a contractual obligation in an insurance policy for coverage, there can be no claim for bad faith." *Travelers Indem. Co. v. Armstrong*, 565 S.W.3d 550, 56 (Ky. 2018). The *Travelers* decision is silent on the issue of whether a valid bad faith claim may exist against an insurance agent in a case where the insurer, who is

11

also named as a defendant in the case, is obligated to pay the plaintiff pursuant to a valid insurance contract.

*Travelers* addresses a bad faith claim against an insurer, not an agent, and finds that an obligation to pay does not exist against any defendant. In *Travelers*, the plaintiff—administrator of the estate of a decedent who died in a car accident—brought a bad faith claim against Travelers Indemnity Company ("Travelers"). Travelers insured Martin Cadillac, Inc. ("Martin"), a car dealership who had previously sold the car in which the plaintiff's decedent died. The Kentucky Supreme Court determined that Martin did not own the car at the time of the accident and therefore "Travelers had no contractual obligation for coverage on the vehicle at the time of the accident" and, without an obligation to pay, "the bad faith claim must fail as a matter of law." *Id.* In other words, the court found that the bad faith claim failed because the insurer was not obligated to pay. In the case before this Court, the record is unclear regarding whether State Farm—the insurer in this case—had an obligation to pay. Therefore, *Travelers* is unpersuasive.

Second, Defendants argue that "Kentucky courts have held that insurance agents cannot be liable for bad faith as a matter of law." (DN 13 at 8). State Farm cites *Western Leasing, Inc. v. Accordia of Ky. Inc.*, No. 2008-CA-002237-MR, 2010 Ky. App. LEXIS 81, 2010 WL 1814959 (Ky. App. May 7, 2010)[4] to support this argument. In *Western Leasing*, the Kentucky Court of Appeals held that *insurance brokers* are not "engaged in the business of insurance" as that term is intended under the UCSPA. The case does not hold, as State Farm contends, that *insurance agents* are not covered

---

[4] On appeal, the Kentucky Supreme Court denied discretionary review but ordered the Court of Appeals' opinion in *Western Leasing* not to be published. *Accordia of Ky., Inc. v. Western Leasing, Inc.*, 2010-SC-000380-D, 2011 Ky. LEXIS 433 (March 16, 2011).

12

by the UCSPA. In reaching its decision, the *Western Leasing* court carefully distinguished insurance brokers from insurance agents. The court explained:

> "An 'insurance broker' is one who acts as middleman between the insured and the insurer, and who solicits insurance from the public under no employment from any special company, and who, upon securing an order, places it with a company selected by the insured, or, in the absence of such a selection, with a company selected by himself; whereas an '[i]nsurance agent' is one who represents an insurer under an employment by it."

*Western Leasing*, 2010 Ky. App. LEXIS 81 at *25-26 (quoting *Travelers Fire Ins. Co. v. Bank of Louisville*, 243 S.W.2d 996, 998 (Ky. 1951) (internal quotation and citation omitted)). The court further explained that "in the absence of statutory or some special indicia of authority [an insurance] broker is *the agent of the insured* and not the insurer." *Id.* (emphasis added) (quoting *J. Inmon Ins. Agency, Inc. v. Ky. Farm Bureau Mutual Ins. Co.*, 549 S.W.2d 516, 518 (Ky. 1977)). The *Western Leasing* court then reasoned that "[a]s an agent of the *insured*, [the insurance broker] was neither an insurance company nor an agent of an insurance company under the facts of this case. Accordingly, [the insurance broker] was outside the scope of persons who are intended to be regulated under the UCSPA." *Id.* at *26 (emphasis added). Furthermore, the court reasoned that an insured's agent is exempt from the UCSPA due to KRS 304.12-220 which states that "[f]or the purpose of KRS 304.12-230, 'person' shall not mean an insured." *Id.* at *26-27. The *Western Leasing* court therefore concluded that "insurance *brokers* who operate as agents of the *insureds* are not subject to regulation or liability under the UCSPA." *Id.* at *27 (emphasis added).

The rationale behind the Kentucky Court of Appeals' decision in *Western Leasing* does not apply to the facts of this case. Defendants do not dispute that the Agency is an insurance agent. *Western Leasing* only applies to insurance brokers because the court's rationale depended on insurance brokers' agency relationship to the insured, rather than to the insurer, and because KRS

203.12-230 explicitly excludes the insured from liability under the UCSPA. Because it is—at a minimum—ambiguous whether the Casey Simpson Agency is an insurance agent or an insurance broker and because the Court must decide ambiguities in favor of remand, *Western Leasing* is unpersuasive.

Third, State Farm argues that Plaintiff has not stated a claim against the Agency because "in the Complaint under Count II alleging common law and statutory bad faith, [Plaintiff] only alleges that 'State Farm' violated the UCSPA and engaged in bad faith." (DN 13 at 6). It is true that Count II of Plaintiff's complaint specifically names State Farm but does not mention the Casey Simpson Agency by name. (DN 1-2 at ¶ 38 – 41). In her reply, however, Plaintiff clarifies that she adopted and incorporated all preceding paragraphs of the complaint into Count II. (DN 14 at 8); *See also* (DN 1-2 at ¶ 38). And Plaintiff further clarifies that, in the incorporated paragraphs, she claims that "the Agency engaged in actions that would constitute bad faith in concert with State Farm" and that "[t]he Complaint further states that 'this is an action against *the Defendants* for bad faith.'" *Id.* The Court agrees that the complaint, viewed in its entirety, states a colorable claim for bad faith against the Casey Simpson Agency. Therefore, the Court will liberally read Count II of Plaintiff's Complaint as alleging bad faith against the Casey Simpson Agency. *See Griffin v. Middlefork Insurance Agency*, No. 17-215-DLB, 2017 WL 4413403, *4 (E.D. Ky. Oct. 4, 2017) (Liberally construing the plaintiff's bad faith claim to include the Middlefork Insurance Agency, although the plaintiff's complaint only asserted a bad faith claim against Allstate).

Fourth, State Farm argues that "Kentucky federal courts have also dismissed bad faith claims against insurance agents." (DN 13 at 8). State Farm cites *Chicago Motors, LLC v. Apex Ins. Agency Int'l., Inc.*, No. 3:13-CV-00356-CRS, 2014 WL 798154 (W.D. Ky. Feb. 27, 2014) to

support his argument. State Farm argues that the *Chicago Motors* court "addressed a claim by a used car lot that its insurance agent was negligent in failing to provide coverage for hail damage and also was liable for common law and statutory bad faith" and that the court "found that Kentucky case law suggests that 'privity of contract is necessary for liability to attach under the UCSPA because bad faith actions derive from the fiduciary duty that insurance company owes to its insured under the insurance contract' and ruled that the bad faith claims against the agency failed as a matter of law." (DN 13 at 8-9) (quoting *Chicago Motors*, 2014 WL 798154, at *5).

This Court is unpersuaded by the reasoning in *Chicago Motors*. In *Chicago Motors*, Apex Insurance allegedly sold an insurance policy to Chicago-Speed but failed to procure the coverage limits that Chicago-Speed expected to receive. *Chicago Motors*, 2014 WL 798154, at *5. Another entity, State National, was the insurer in that case. The *Chicago Motors* court reasoned that Apex Insurance could not be liable for bad faith in violation of the UCSPA because "it appears to have been possibly acting as an agent or broker." *Id.* The court supported its rationale by citing to *Western Leasing*. As discussed in greater detail above, the Kentucky Court of Appeals in *Western Leasing* reached its decision by drawing an important distinction between insurance agents and insurance brokers. An "insurance agent" is an agent of the insurer. An "insurance broker" is an agent of the insured. And because KRS 203.12-230 explicitly excludes the insured from liability under the UCSPA, the *Western Leasing* court held that the insured's agent—*i.e.* the broker—was also exempt from liability under the UCSPA. But the *Chicago Motors* court did not consider this important distinction in its reasoning. The *Chicago Motors* court explained that:

> Chicago-Speed is apparently in agreement with Apex Insurance that the *Western Leasing* court held that an insurance *agent or broker* is not liable to an insured under the UCSPA. Because Chicago-Speed does not seem to dispute that Apex Insurance was an insurance *agent or broker*, the court finds that Apex Insurance is not subject to the UCSPA.

15

*Chicago Motors*, 2014 WL 798154, at *5 (emphasis added). Because the *Chicago Motors* court based its decision on *Western Leasing* but did not consider the distinction between insurance agents and insurance brokers, the case is unpersuasive.

Furthermore, the *Chicago Motors* court reasoned that Apex Insurance was exempt from the plaintiff's bad faith claim because "Apex Insurance was not a party to the policy, Apex Insurance was not in privity of contract with Chicago-Speed and owed no fiduciary duty to Chicago-Speed under that policy." *Id.* As explained above in greater detail, this Court is not persuaded by this line of reasoning. The law is not clear regarding whether every defendant must be a party to the contract for a plaintiff to state a valid bad faith claim under the UCSPA. It may be true that a plaintiff can maintain a valid bad faith action against an insurance agent where the agent is not a party to the contract but the insurer had an obligation to pay under the terms of the insurance contract. Because of this ambiguity, the Court must grant Plaintiff's motion to remand.

State Farm also cites *Griffin v. Middlefork Ins. Agency and Allstate Ins. Co.*, No. 17-215-DLB, 2017 WL 4413403 (E.D. Ky. Oct. 4, 2017) to support its argument that Kentucky Federal Courts have dismissed claims against insurance agents. *Griffin* is unpersuasive for the same reasons discussed in this Court's analysis of *Chicago Motors*. First, *Griffin* holds that the plaintiff did not have a colorable bad faith claim against the agent/broker because the agent/broker was under no contractual obligation to pay the plaintiff's claims. *Id.* at * 4. But as this Court has explained, Kentucky law is ambiguous regarding whether an insurer's obligation to pay is sufficient to support a colorable bad faith action against the insurance agent. Second, the *Griffin* court does not distinguish between insurance agents and brokers. The distinction between agents and brokers is important to the determination of whether a colorable bad faith claim exists against

16

a party who is not an insurer. Furthermore, the *Griffin* court "acknowledges that Kentucky law is unclear as to which 'persons' can be liable under the UCSPA and that federal district courts have often 'resolved' those legal ambiguities 'in favor of remand for the non-removing party averring bad faith claims against an insurance agency and its adjuster.'" *Id.* n. 5 (citing *Brown v. Indem. Ins. Co. of N. Am.*, No. 5:17-cv-193-JMH, 2017 U.S. Dist. LEXIS 109517, 2017 WL 3015171, *2 (E.D. Ky. July 14, 2017) (citing *N. Am. Specialty Ins. Co. v. Pucek*, No. 5:09-cv-49-JMH, 2009 U.S. Dist. LEXIS 104482, 2009 WL 4711261 (E.D. Ky. Nov. 4, 2009); *Collins v. Montpelier U.S. Ins. Co.*, No. 7:11-cv-166-ART, 2011 U.S. Dist. LEXIS 143224, 2011 WL 6150583 (E.D. Ky. Dec. 12, 2011); *Mattingly v. Chartis Claims, Inc.*, No. 2:11-cv-48-WOB, 2011 U.S. Dist. LEXIS 106962, 2011 WL 4402428 (E.D. Ky. Sept. 20, 2011))); *See also Hambelton v. State Farm Fire and Cas. Co.*, 2018 WL 3233608 (E.D. Ky.); *Winburn v. Liberty Mutual*, 933 F.Supp.2d 664 (E.D. Ky. 1996). This Court is persuaded by these federal cases which acknowledge the ambiguity surrounding this issue and finds that the ambiguity in this case mandates remand.

**Conclusion**

This Court finds both state and federal law to be ambiguous regarding whether a plaintiff may state a colorable bad faith claim against an insurance agent under the circumstances of this case. The state court may find that State Farm did not have an obligation to pay, that insurance agents—like insurance brokers—are exempt from the UCSPA, or that every defendant must be a party to the contract for a plaintiff to assert a colorable bad faith claim. But the legal standard at this stage in the proceeding requires the Court to resolve these ambiguities in favor of remand. Therefore, Plaintiff's motion to remand is **GRANTED.**

**Order**

For the reasons stated in the Memorandum Opinion above and being otherwise sufficiently advised, **IT IS HEREBY ORDERED,**

(1) Plaintiff Sarah Stinson's motion to remand (DN 9) is **GRANTED**; and
(2) Defendant Casey Simpson Agency's motion to dismiss (DN 5) is **DENIED AS MOOT**; and
(3) The above-captioned action is **HEREBY REMANDED** to the Jefferson Circuit Court; and
(4) The Clerk is directed to close the case.

**IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

September 25, 2019

CC: Counsel of record.